# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

STEPHANIE MITCHELL,

     Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

     Defendant.

Case No.: 2:18-cv-01501-GMN-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 18, 21

This Report and Recommendation is made to the Honorable Gloria M. Navarro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Remand. (ECF No. 18.) The Acting Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 21, 22.) Plaintiff filed a reply brief. (ECF No. 24.) When Plaintiff filed her motion, Nancy A. Berryhill was the Acting Commissioner of Social Security. The new Acting Commissioner is Andrew Saul, and the caption now reflects this change.

After a thorough review, it is recommended that Plaintiff's motion be granted; the Acting Commissioner's cross-motion be denied; and, that this matter be remanded for the calculation and award of benefits.

///

# I. BACKGROUND

In 2015[1], Plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning July 8, 2014. (Administrative Record (AR) 188-190.) The application was denied initially and on reconsideration. (AR 88-108.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 124-125.) ALJ Cynthia Hoover held a hearing on January 19, 2017. (AR 37-85.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On August 23, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 13-28.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-9.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues the ALJ did not set forth legally sufficient reasons for discounting the opinions of Plaintiff's treating health providers Dr. Michael Henry and Dr. Wayne Mun Lee, and the ALJ improperly rejected Plaintiff's testimony, rendering the ALJ's determination at step four improper.

The Acting Commissioner, on the other hand, argues the ALJ properly analyzed the medical evidence and Plaintiff's subjective complaints, which supports the ALJ's finding that Plaintiff is not disabled at step four.

///
///
///

---

[1] The application summary states that the application was completed on May 19, 2015; however, the denials at the initial and reconsideration level list the application date as February 24, 2015.

# II. STANDARDS

**A. Disability Process**

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740

F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids[2]. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

---

[2] The Grids look at various combinations of factors relevant to a claimant's ability to work to determine whether the claimant is disabled in certain scenarios.

2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

### A. ALJ's Findings in this Case

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2019 and had not engaged in substantial gainful activity since the alleged onset date of July 8, 2014. (AR 18.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: osteoarthrosis and allied disorders, dysfunction of a major joint, degenerative disc disease, other, unspecified arthropathies, and peripheral neuropathy. (AR 19.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 20.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except she can lift 20 pounds occasionally and 10 pounds frequently; she can stand and sit for six hours, and has to change positions every hour for one to two minutes; she can frequently push or pull with the right lower extremity; she can never climb ladders, ropes or scaffolds; she can do other postural activities on an occasional basis; she can frequently reach overhead, in front and laterally with the left upper extremity. (AR 20.)

The ALJ then concluded Plaintiff was able to perform her past relevant work as a real estate agent, bus driver and receptionist. (AR 26-27.) As a result, the ALJ found Plaintiff not disabled from July 8, 2014, through the date of the decision. (AR 27.)

**B. Medical Opinion Evidence**

**1. Standard**

"Courts 'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physician); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188

1  (July 2, 1996).[3] Even when the treating sources are not given controlling weight, they are still

2  entitled to deference. *Id.*

3        The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given

4  to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

5  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted).

6  "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining

7  physician, [and] the opinion of an examining physician is entitled to greater weight than that of a

8  non-examining physician." *Id.* (citation omitted). "If a treating physician's opinion is well-

9  supported by medically acceptable clinical and laboratory diagnostic techniques and is not

10  inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling

11  weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks

12  omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R.

13  § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the

14  degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*,

15  759 F.3d at 1012 (citation and quotation marks omitted).

16        "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

17  state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of*

18  *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining

19  doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific

20  and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012

21

22
23  [3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

(citation and quotation marks omitted). "Where an ALJ does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (emphasis added).

### 2. Medical Evidence

Plaintiff's medical records reveal that Plaintiff saw Dr. Lee on July 2, 2013, and reported right hip pain. An MRI showed mild degenerative joint disease and greater trochanteric bursitis with evidence of cystic changes consistent with arthritis. She had pain with range of motion. She was given pain medications and muscle relaxers, did physical therapy, as and was administered cortisone injections. The injections gave her some short term relief, but the pain always returned, and worsened over time. Physician's Assistant (PA) Jeromy Dyer noted that her daily activities aggravated her condition. She was often noted to favor her right side, and to have some difficulty ambulating. She reported that the pain affected her ability to work. She had pain and tenderness on examination, and reported that it hurt to sit and stand for a long time, to get in and out of the car, to cross her legs, put on shoes and socks, go up and down stairs, and with prolonged walking. She also had lower back pain that was thought to be secondary to the hip pain, and imaging revealed degenerative changes. She saw Dr. Lee, Dr. Henry, PA Dyer, and orthopedic specialists Dr. Ryan Bennet and Dr. James Mamone for her hip issues between 2013 and 2016. Drs. Mamone and Henry noted that the osteoarthritis in the right hip was not responding well to conservative management, and she was ultimately was found to be a candidate for hip surgery following the continuous failure of conservative measures to alleviate her symptoms. (AR 369-70, 392, 406-07, 415-17, 420, 423,  438, 456-57, 460-61, 466-68, 487, 493-94, 499, 504, 514-15, 519, 523-24, 530, 547, 551, 560, 562, 575-76, 599, 714-15.)

Plaintiff also suffered from chronic neck pain and associated headaches, muscle spasms, and limited range of motion. She was diagnosed with moderate degenerative disc disease and osteoarthritis. She reported that her pain was chronic and the various conservative modalities used to treat her pain (heat, ice, topical analgesics, valium, and muscle relaxers) did not make much of a difference. (AR 312-17, 345, 397-98, 414, 420, 423, 435, 438-39, 442-43, 445, 468, 471, 478-88, 491-92, 499, 502, 515, 518-19, 528, 533, 551, 563.)

Plaintiff also had several issues with her left foot. In May of 2009 she was diagnosed with bilateral plantar fasciitis and was given an injection and custom inserts. Her foot pain continued into 2010, and the injections and orthotics were not helping, and the pain was radiating up her legs. She complained of foot pain and numbness in her left toes when she saw Dr. Lee on July 10, 2014. She had a consult with podiatrist Damon Namvar, DPM, on July 18, 2014. She reported left foot pain with tingling and shooting pain. She was diagnosed with a second interspace neuroma, hallux abducto valgus with bunion deformity, and second digit hammertoe deformities. She elected to proceed with surgical excision of the neuroma. She also developed a bone spur to the dorsal left midfoot that was causing a shooting and burning pain. Dr. Namvar then proposed a left second interspace neurectomy and left foot exostectomy, which was performed on July 30, 2014. In November 2014, her left bunion deformity was giving her pain with ambulation. A February 2015 x-ray of the left foot showed mild hallux valgus deformity of the first metatarsal phalangeal joint with mild associated degenerative changes. At that time she also saw Dr. Navmar for a lower leg laceration from a bookcase falling on her. She was immobilized in a cam-walker boot. Her pain persisted, and she also had tingling and numbness in the lower left leg and calf. The immobilization was continued and testing was done to rule out deep vein thrombosis. In June of 2014, she reported her pain had recently become worse, and she had pain with excessive ambulation, muscle cramping

and spasms. She was assessed with hallux abducto valgus with bunion deformity, and second and third metatarsophalangeal joint stress syndrome. She was ordered immobilized again to treat the stress fractures, and was given Flexeril for muscle spasms. They discussed surgical intervention once her posterior lower leg wound healed and the stress fractures improved: a left distal first metatarsal osteotomy with bunionectomy, left second and third proximal interphalangeal joint arthroplasties and left second and third metatarsal osteotomies. On June 16, 2015, Dr. Henry noted that she was bothered with Morton's neuroma, a bunion, and paresthesia secondary to the neuroma post resection. He recommended bilateral foot orthosis after her left ankle healed. When she saw Dr. Lee again on August 11, 2015, she complained that her left foot was in bad shape. At a follow up with Dr. Namvar, he stated that her second metatarsophalangeal joint and left bunion deformity were still sources of pain, and she still had muscle spasms despite the use of Flexeril. She was assessed at that time with a possible stump neuroma in the left second interspace; hallux abducto valgus with bunion deformity; left second and third metatarsophalangeal joint stress syndrome; stress fractures at the second and third metatarsals; muscle spasms; and a possible left second metatarsophalangeal joint plantar plate tear. An MRI was ordered and she was to continue on Flexeril, and get inserts and support pads. They once again discussed surgical intervention. (AR 307, 318, 322, 369-70, 408, 468, 474-76, 479, 482, 495, 520, 522, 524, 525, 528-30, 547, 551.)

In addition, Plaintiff experienced left shoulder pain. She had reduced range of motion and discomfort and pain with reaching up and internal rotation. Imaging showed hypertrophic changes, and calcific tendinitis. (AR 405, 504, 506, 515, 518-19.)

On November 20, 2014, Dr. Henry filled out a work accommodation assessment. He opined that Plaintiff could lift/carry five pounds. She could push/pull 15 pounds. She could sit, stand and walk for three to four hours. She could bend at the waist at 50 percent. She could not

squat, crouch, kneel or climb. She could not do reaching with either hand. He stated that Plaintiff was not improving, her disabilities made her unable to work, and her conditions were permanent. (AR 373-75.)

On July 22, 2015, State disability reviewing physician R. Dwyer, M.D., opined at the initial level that Plaintiff could occasionally lift 50 pounds, and frequently lift 25 pounds; she could stand, walk and sit for six hours in an eight-hour day; her ability to push and pull was limited in both upper extremities and the right lower extremity due to bilateral shoulder osteoarthritis and pain with limited range of motion, as well as right hip pain and osteoarthritis. She could climb ramps and stairs frequently, and ladders, ropes and scaffolds occasionally. She could frequently balance, stoop (bend at the waist), kneel and crawl. (AR 91-92.)

On November 5, 2015, State disability reviewing physician R. Masters, M.D., opined at the reconsideration level that Plaintiff could occasionally lift 20 pounds, and frequently lift 10 pounds. She could sit, stand and walk six hours in an eight-hour day, but must periodically alternate between sitting and standing to relieve pain and discomfort every hour for one-to-two minutes to stretch and move about.  Her ability to push and pull was limited in the left upper extremity and right lower extremity. She could climb ramps and stairs occasionally, but never climb ladders, ropes of scaffolds. She could balance, stoop, and kneel occasionally. She had postural limitations due to the left shoulder and right hip. She had a limitation for overhead reaching with the left side, but could frequently reach overhead and in front/laterally with the right. She had no limitations for handling, fingering and feeling. (AR 104-105.)

On January 21, 2016, Dr. Lee diagnosed Plaintiff with hip arthrosis, wrist arthritis, carpal tunnel syndrome, neck pain, back pain, secondary degenerative disc disease and facet arthropathy. He opined that Plaintiff could sit, stand and walk for two hours in an eight-hour day, and needed

to be able to alternate between sitting and standing throughout the day. She could not do simple grasping, repetitive motion tasks, or fine manipulation on the left or right. She could occasionally lift/carry up to twenty pounds. She could stoop and crouch occasionally. (AR 556.)

On January 17, 2017, Dr. Lee again opined Plaintiff could sit and stand for two hours in an eight-hour day, where she could sit for 30 minutes at a time, and stand for 15 minutes at a time. She could lift/carry up to 20 pounds occasionally. She could occasionally climb ramps and stairs, balance, stoop and bend, kneel, crouch, and squat, but could never climb ladders and scaffolds. She needed an assistive device for getting up and down and for long distances. She would need to take more than two unscheduled breaks in an eight-hour period, and she was likely to have good days and bad days. She would likely be absent more than four days per month. In addition, her pain may affect her concentration for more than a total of two hours in an eight-hour day. (AR 723-24.)

### 3. ALJ's Conclusions

The ALJ gave the opinion of State disability reviewing physician Dr. Masters great weight, finding it consistent with the record and supported by an explanation. The ALJ stated that Plaintiff had ongoing right hip pain with imaging showing progressive osteoarthritis; she complained of neck and back pain with radicular symptoms; imaging showed degenerative disc disease; she had weakness, likely due to peripheral causes; she had ongoing left shoulder pain and imaging showed hypertrophic changes; she was found to have full range of motion of the hip with no popping or clicking; she was able to ambulate; she had good distal sensation and good capillary refill; and, no significant atrophy was noted. (AR 25.) The ALJ gave State disability reviewing physician Dr. Dwyer's opinion little weight. (AR 25.)

The ALJ gave Dr. Lee's opinions partial weight. The ALJ stated that Plaintiff was limited to light work, but the additional limitations were not supported by the evidence. The ALJ stated that Plaintiff is somewhat limited due to degenerative disc disease, peripheral neuropathy, left shoulder degenerative joint disease, and right hip osteoarthrosis, and she is a candidate for right hip replacement, but noted that Plaintiff was found to have full range of motion with the right hip with no catching, locking, popping, or clicking; her hip was stable in the extremes of rotation; she had no significant atrophy; she was able to ambulate; she had good sensation and good capillary refill. (AR 25.)

The ALJ gave Dr. Henry's opinion little weight. The ALJ stated that Plaintiff is somewhat limited as she has ongoing right hip pain due to degenerative changes and is a candidate for hip replacement surgery; she has degenerative disc disease, radicular symptoms, and weakness due to peripheral causes; and, she has left shoulder pain with hypertrophic changes. The ALJ noted, however, that Plaintiff was found to be healthy appearing and in no acute distress; her hip had no catching, locking, popping or clicking; her hip was stable in the extremes of rotation; she was able to ambulate; she had good distal sensation, good capillary refill, and palpable pulses; and, no significant atrophy was noted. Therefore, the ALJ concluded that Plaintiff is not as limited as Dr. Henry found. (AR 26.)

**4. Analysis**

Since Dr. Lee's and Dr. Henry's opinions were contradicted by State disability reviewing physician Dr. Master's opinions, the ALJ must set forth specific and legitimate reasons for rejecting the opinions of Drs. Lee and Henry that are supported by substantial evidence in the record.

With respect to Dr. Lee's and Dr. Henry's opinions, the ALJ found Plaintiff was somewhat limited but that the additional limitations imposed by Dr. Lee and Dr. Henry were not justified

because Plaintiff had full range of motion with the right hip with no catching, locking, popping, or clicking; her hip was stable in the extremes of rotation; she had no significant atrophy; she was able to ambulate; she had good sensation and good capillary refill; and, she was healthy appearing and in no acute distress.

The conclusion to reject Dr. Lee's opinions on this basis is not supported by substantial evidence in the record. The ALJ states that Plaintiff had full range of motion, but it was frequently noted that Plaintiff had pain with range of motion. While Plaintiff could ambulate, there were frequent notations that she favored one side with an antalgic gait, got out of the chair slowly, or had difficulty changing positions on the table due to her hip pain. In addition, Plaintiff reported increased pain even with light activities, and pain with sitting, standing and walking for long periods. She noticed popping with pain on one occasion, even though it was not reproduced at that exam. She had positive impingement tests, and was consistently tender to palpation along the affected area. Conservative measures including medications, physical therapy and repeated steroid injections had failed, and her pain grew progressively worse, to the point that she was declared a candidate for total hip replacement surgery. Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy "appearing" and in no "acute" distress do not distract from the findings regarding Plaintiff's chronic conditions.

The Acting Commissioner cites many reasons that support the ALJ's decision to reject the opinions of Dr. Lee and Dr. Henry; however, none of them were actually set forth by the ALJ. The court may only affirm the ALJ on grounds that were set forth in the decisions. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citation omitted).

Therefore, the court finds that the ALJ erred in not setting for specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Drs. Lee and

Henry. The court will address below whether this should result in a remand for further proceedings or for the calculation and award of benefits.

**C. Plaintiff's Credibility**

**1. Standard**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

///

///

### 2. Plaintiff's Testimony

Plaintiff testified that she had multiple surgeries on her hands, and has nerve damage that causes pain and tingling. Her hands swell up and hurt and she cannot grasp things like she used to. She has had two neck surgeries, and still has pain that radiates down her nurse that is worse on the left side. She has problems holding her neck up, and sometimes has to hold her head down because of pain and spasms on the left side. She could not look at a screen all day because of this. She gets migraine headaches and has TMJ, both of which are related to her neck problems. She has spasms in her neck and shoulders so she cannot push and pull as she used to. She cannot bend. She cannot sit as long as she used to. She needs a hip replacement. She does not sleep well and is often tired during the day.

In a typical day, she reads and watches some television, and sometimes prepares meals and does dishes. Her daughter does most of her laundry, and her grandson does vacuuming and sweeping for her. She goes shopping with the assistance of her daughter or grandson or neighbor. If she cleans, it takes her a long time to complete a task. She cannot do any of her hobbies anymore. She cannot open a lid on a jar. She can button a shirt but it takes time. Sometimes she cannot bend over to tie her shoes. She cannot type for any length of time due to cramps in her hands and fingers. She might have bad days 15-20 days a month. There are days when she cannot force herself to get out of bed, and that occurs maybe twice a week. She used to go to church regularly, but it has been months since she had been either because she cannot get out of bed or sit that long in church (which lasts an hour and a half). Even with shifting around or standing, she still felt horrible.

Her average pain level is between a seven or eight on a scale of one to ten, and that is with pain medications. She uses a walker when her hip goes out on her (approximately three to four times a month), and has an assistive device in the shower. She also uses a cane off and on due to

her neck and back problems. She estimates she could sit for two to three hours in an eight-hour day, but would have to change positions. She could lift five pounds with one hand, and a gallon of milk with both hands.

### 3. Analysis

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (AR 21.) The ALJ went on to summarize the medical evidence, as well as the medical opinion evidence and assigned weight to the medical opinions (as discussed, *supra*). The ALJ then concluded that the RFC assessment was supported by the objective medical evidence which did not corroborate Plaintiff's allegations. The ALJ further stated that Plaintiff's reported activities of daily living contradicted her allegations. As a result, the ALJ found that Plaintiff's impairments were not as limited as she alleged. (AR 26.)

The court finds the ALJ did not set forth clear and convincing reasons for discrediting Plaintiff's subjective symptoms statements. Other than summarizing the medical evidence and referencing a contradiction with the medical evidence and daily activities, the ALJ provided no substantive explanation for discrediting Plaintiff's testimony. The ALJ failed to specifically identify which of Plaintiff's statements were not credible and why, and in failing to do so the ALJ erred. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). "[P]roviding a summary of medical evidence in support of a [RFC] finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id*. at 494 (emphasis original). This is because the court cannot review whether the ALJ cited specific, clear and convincing

reasons when the ALJ does not identify "*which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Id.*

Moreover, a review of the record reveals that Plaintiff's symptom testimony is consistent with the objective medical evidence. In addition, there is no indication that her testimony regarding her daily activities contradicts the objective medical evidence. Similar to *Garrison*, 759 F.3d 995, Plaintiff testified that while she can do a few household activities and tasks, they all require assistance from others; she has not been to church in months because she either cannot get out of bed or she cannot sit through the hour and a half service. Again, the Acting Commissioner cites many reasons that would justify the ALJ discrediting Plaintiff's subjective symptom testimony; however, none of these reasons were actually discussed by the ALJ.

In sum, the ALJ erred in failing to set forth specific, clear and convincing reasons supported by the record for discrediting Plaintiff's testimony. The court will now determine whether the matter should be remanded to the ALJ for further proceedings or for calculation and award of benefits.

**D. Remand for Further Proceedings or for Calculation and Award of Benefits**

Finding the ALJ committed multiple errors, the court must now determine whether to remand for further proceedings or remand for the calculation and award of benefits.

The court, after reviewing an action challenging the final decision of the Commissioner of Social Security, has the "power to enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing.*" 42 U.S.C. § 405(g) (emphasis added). Thus, "in appropriate circumstances courts are free to reverse and remand a determination by the

Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019 (citing cases from every circuit).

The Ninth Circuit discussed the scope of this power in *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) (*Varney II*). It was in that case that the Ninth Circuit announced the "credit-as-true" rule, holding:

> [W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will … take that testimony to be established as true.

*Id.* at 1401. The following year, the Ninth Circuit held that the credit-as-true rule also applies to medical opinion evidence. *See Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989).

In subsequent years, the Ninth Circuit developed a three-part standard to satisfy the credit-as-true rule before a court may remand with instructions to calculate and award benefits. Courts must consider: (1) "whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion[;]" (2) "whether there are outstanding issues that must be resolved before a disability determination can be made, … and whether further administrative proceedings would be useful[;]" and (3) "[w]hen these first two conditions are satisfied, we then credit the discredited testimony as true for purposes of determining whether, on the record as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (internal quotation marks and citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-1101 (9th Cir. 2014) (citations omitted); *Garrison*, 759 F.3d at 1020 (citations omitted).

In *Garrison*, the Ninth Circuit reiterated its prior conclusion that the "credit-as-true rule may not be dispositive of the remand question in all cases." *Id.* Instead, the rule "envisions 'some

flexibility.'" *Id*. (citation omitted). Noting that the court had not yet exercised such flexibility or clarified the scope of flexibility, the court addressed that issue in *Garrison*. The Ninth Circuit explained the flexibility as follows: even if all the conditions of the credit-as-true standard are satisfied, remand for calculation and award of benefits is not appropriate if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. The court described this interpretation of flexibility as aligning the rule with "the basic requirement that a claimant be disabled in order to receive benefits." *Id*. The Ninth Circuit described it in subsequent cases as having the court consider "whether the record taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Treichler*, 775 F.3d at 1101 (citation and quotation marks omitted); *see also Leon*, 880 F.3d at 1044 (citations omitted).

In *Garrison*, the Ninth Circuit found that the district court's remand for further proceedings was improper where the claimant satisfied all components of the credit-as-true standard and there was nothing in the record to suggest that the claimant was not in fact disabled. *Id*.

The Ninth Circuit addressed the credit-as-true rule again later that year in *Treichler,* and then in 2017 in *Leon v. Berryhill.* In *Treichler* and *Leon*, the Ninth Circuit confirmed that the exercise of authority to remand for calculation and award of benefits is discretionary and should be a rare departure from the ordinary remand rule. *Leon,* 880 F.3d at 1045; *Treichler*, 775 F.3d at 1100, 1102 , 1103 (citations omitted). *Leon* also clarified that even when all of the credit-as-true rule's conditions have been satisfied, remand for an immediate award of benefits is not required. *Leon*, 880 F.3d at 1045. In *Treichler*, the Ninth Circuit found that there were significant factual conflicts between the claimant's testimony and the medical evidence and so the case should be remanded for further proceedings. *Id*. at 1104-05.

The court will now address whether Plaintiff satisfies the components of the credit-as-true standard, and whether there is anything in the record as a whole that suggests Plaintiff is not in fact disabled.

The first component of the credit-as-true standard is obviously satisfied since the court concluded that the ALJ erred in failing to provide legally sufficient reasons for discrediting Plaintiff's testimony and the opinions of her treating physicians.

Next, the court must consider whether the record has been fully developed and whether further administrative proceedings would serve a useful purpose. "Administrative proceedings are generally useful where the record has [not] been fully developed, …there is a need to resolve conflicts and ambiguities, …, or the presentation of further evidence … may well prove enlightening' in light of the passage of time[.]" *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted).

The Ninth Circuit has stressed that precedent "foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan [to revisit the medical opinions and testimony that were improperly rejected] qualifies as a remand for a 'useful purpose' under the … credit-as-true analysis." *Garrison*, 759 F.3d at 1021-22 (citations omitted).

In this case, the evidence regarding Plaintiff's ability to sit/stand in an eight-hour workday is critical because if Plaintiff is as limited in this regard as she and her treating physicians contend then she is unable to do her past relevant work, and should be found disabled under the Grids at step five. The court does not find that there are any remaining conflicts or ambiguities that need to be resolved or developed with respect to this issue. The records are clear that Plaintiff had progressively worsening hip pain due to osteoarthritis that failed to respond to conservative treatment measures including physical therapy, medications and repeated steroid injections.

Plaintiff was consistently described as being able to ambulate, but with difficulty (either having an antalgic gait that favored one side, that caused her to get up slowly or have difficulty getting off of the chair). She routinely had pain with range of motion. As her condition progressively worsened, she repeatedly reported that she had difficulty standing, sitting and walking for long periods of time. She had lumbar spine pain secondary to the arthritis in her hip. She also had chronic issues with her left foot. Dr. Lee opined Plaintiff could sit, stand and walk for two hours, while Dr. Henry opined she could sit, stand and walk for three to four hours. Plaintiff testified she could do so for two to three hours, and that she could not sit through an hour and a half long church service. These statements are internally consistent with each other and the longitudinal record. The court finds no conflicts or ambiguities that remain to be resolved, and the record is otherwise fully developed. Nor does the court find that further testimony would prove enlightening at this point.

Finally, nothing in the record suggests that Plaintiff is not in fact disabled. If the testimony of Dr. Lee, Dr. Henry and Plaintiff is credited, Plaintiff can sit and stand somewhere between two and four hours in an eight-hour day. This is sedentary work. *See* 20 C.F.R. § 404.1567; Social Security Ruling (SSR) 83-10, 1983 WL 31251 ("the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday."). The VE's testimony and the ALJ's decision reveal that Plaintiff performed her past relevant work at the light level or above, and that it is generally performed at the light or medium level. (AR 27, 75-76.) With the limitations opined by Drs. Lee and Henry, and corroborated by Plaintiff's testimony, she could not perform her past relevant work.

The Acting Commissioner does not dispute that if Plaintiff is limited to sedentary work, then given her age at the time of the hearing and other factors she would be found disabled at step

five under the Grids, 20 C.F.R., Subpart P, Appendix 2, Rule 201.06. Therefore, this matter should be remanded for the calculation and award of benefits.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order: **GRANTING** Plaintiff's motion (ECF No. 18); **DENYING** the Acting Commissioner's cross-motion (ECF No. 21); and **REMANDING** this matter for the calculation and award of benefits consistent with this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 13, 2020.

_William G. Cobb_
William G. Cobb
United States Magistrate Judge